CASSIE A. STEVENS v. WASHINGTON I. CARSON.

[FILED OCTOBER 7, 1890.]

1. **Husband and Wife:** CONVEYANCES BETWEEN: BURDEN OF PROOF. In a contest between a wife and a creditor of her husband, over property transferred to her by him, after the debt is contracted, she must establish that she is a *bona fide* purchaser, by a preponderance of the evidence.

2. ———: ———: ———. The fact that the wife had possession of the property, claiming ownership, when it was attached by the creditor of the husband, does not relieve her of the burden of proving that the transfer was not made to her for the purpose of hindering, delaying, and defrauding such creditor.

ERROR to the district court for Fillmore county. Tried below before MORRIS, J.

*F. B. Donisthorpe,* for plaintiff in error.

*J. D. Carson, W. C. Sloan,* and *W. V. Fifield, contra:*

Cases cited by counsel are, in the main, referred to in opinion.

NORVAL, J.

The plaintiff in error sued out a writ of replevin in the court below, against the sheriff of Fillmore county, to re-. cover possession of a general stock of goods and merchandise, taken by defendant in error under several writs of attachment issued against Garrett Stevens, her husband ; she claiming title to the goods under an alleged bill of sale from her husband to her.   She failed to give the replevin ` bond to the coroner, required by law, and the suit was prosecuted against the sheriff for the conversion of the property, praying for the restoration of the goods, or judgment for their value.

The defendant answered admitting that he was sheriff of the county, and denying that the plaintiff was the owner of the goods.   That orders of attachment were isued against Garrett Stevens and the goods seized by the defendants to satisfy the following claims:

| | | | | |
|---|---|---|---|---|
| January 22, 1889. | Donald Bros.................. | $208 | 43 |
| "      24,  " | S. A. Blasland & Co........... | 570 | 95 |
| "      24,  " | J. P. Robinson Notion Co.... | 141 | 06 |
| | Total........................... | $920 | 44 |

. The only right and title of the plaintiff to the property, was by a pretended bill of sale made by Garrett Stevens to her on the 15th of January, 1889, at which time said Stevens was wholly insolvent, of which the plaintiff had full knowledge and notice.   That no consideration was paid by her on said pretended sale, which was entered into by the plaintiff and her husband with the intent and sole purpose of hindering and delaying the creditors of her husband, and was not a *bona fide* sale.   That plaintiff knew at the time the pretended sale was made that it was for the purpose and intent aforesaid; that no change of possession took place, and that at the time defendant levied on said

35

goods and chattels they were the property of said Garrett Stevens.

The plaintiff replied by a general denial.

There was a trial to a jury, with a verdict, finding that, at the commencement of the action, the right to the possession of the property was in the defendant, with damages assessed at five cents. The plaintiff's motion for a new trial was overruled and the cause brought up to this court on the following assignments of error:

" I. The verdict is against the weight of evidence, is contrary to law, and the court erred in not granting a new trial.

" II. In refusing to give the first, second, third, fourth, fifth, sixth, seventh, and eighth instructions asked for by plaintiff.

"III. In giving the third and fourth instructions asked for by defendant."

On the 15th day of January, 1889, Garrett Stevens, the husband of the plaintiff, was engaged in the dry goods and grocery business at Strang, Nebraska, and on that day he executed and delivered to the plaintiff a bill of sale of his entire stock of goods, worth from $1,800 to $2,000. The consideration specified in the bill of sale was $1,150. At the time of the alleged sale, Garrett Stevens was indebted in about the sum of $1,400, besides an alleged indebtedness of $1,150 to his wife. He was the head of a family, and owned no property other than that covered by the bill of sale. The plaintiff was engaged in the millinery business at Strang at the time of the transfer. Her stock was of the value of about $300. At the time the bill of sale was made, Mr. Stevens was being pressed by his creditors for money, of which fact the plaintiff had knowledge. The plaintiff claims, and she and her husband both so testified on the trial, that she let her husband have money and property from time to time after their marriage, for which he agreed to account; that on the 30th day of

June, 1886, they had a settlement, by which it was found that he was indebted to her in the sum of $1,000; that on that day he gave her, in settlement, his promissory note for $1,000, due in three years, drawing six per cent interest; that when the bill of sale was made there was due upon the note $1,150; that part of the property was transferred to her in payment of this note, and that he, at the same time, gave her goods to the amount of $500, claiming that the same was exempt property. The stock covered by the bill of sale was levied upon by the sheriff to satisfy the several writs of attachment sued out against Garrett Stevens.

It was the theory of the defendant in the court below that the transfer of the property from Garrett Stevens to his wife was fraudulent, and was made for the sole purpose of hindering and delaying his creditors in the collection of their debts. The plaintiff testified, among other things, upon cross-examination, in answer to questions, as follows:

Q. How did it come that he paid this (referring to the note) before it was due?

A. Because his creditors were pressing him, and if I got the goods I could satisfy his creditors, whereas if they got it there would be only one or two that would get anything, and the rest would have to go without.

Q. Were you not afraid that about the time you made this transfer that the creditors would come in and take the goods by attachment?

A. There were two houses that had written threatening letters.

Q. You knew of that?

A. Yes, sir.

Q. And then you and he came to Geneva and had these matters drawn up?

A. Yes, sir.

Q. Mr. Stevens came with you.

A. Yes, sir.

Q. That was after the houses had made threats and were about to push their claims and collect their debts?

A. Yes, sir.

Q. Wasn't this transfer from Mr. Stevens for the purpose of placing the property where these other creditors could not reach it?

A. No, sir; it was not.

Q. Didn't you state a while ago that you knew that they were going to push their claims?

A. I knew that, but I wanted it where Mr. Stevens's creditors could not get it all, but each get his share.

Q. One did get it all.

A. I wanted to loan him the money if he would leave the goods with me, and pay the debts, with interest.

Q. Why didn't you turn the goods over to them?

A. They wouldn't get that much out of them.

Q. It was to pay your debts?

A. It was to get the goods and pay it out to Mr. Stevens' creditors.

Q. That was the only object you had in making that transfer?

A. I knew there were sufficient goods to settle my own indebtedness and all his creditors, if I could keep them.

Q. You say that he owed other creditors about $1,300?

A. Yes, sir.

Q. And you $1,100?

A. Yes, sir.

Q. Could that pay it out?

A. If I had continued in business I could have made it out of the goods, with what goods I have there in the store of my own.

Q. Would you have made the transfer at the time if it had not been for the fact that these creditors were crowding your husband?

A. I should not have molested Mr. Stevens till the note was due if it had not been for that.

Q. You told him that the creditors were coming on and you wanted to fix the matter up so as to put them off?

A. No, sir; I did not tell him so.

Q. It was the mutual understanding between you and Mr. Stevens that this should be done for that purpose?

A. For the purpose that I should pay myself first and afterwards pay off the other creditors.

It appears from the testimony contained in the bill of exceptions that Garrett Stevens on December 29, 1888, for the purpose of obtaining goods on credit, made a written statement to Donald Bros. of his liabilities as follows: "S. A. Blailand, Quincy, Illinois, due March 1, $402.50; due January 1, $242.43; in small amounts, about $400; confidential, and all other debts not included above, not any." It will be observed that the alleged indebtedness of Mr. Stevens to the plaintiff was not included in the above statement. It does not appear from the evidence in the record that the goods transferred to the plaintiff were invoiced. The property was turned over to her in the bulk without any separation from the stock, that part claimed as exempt from that claimed to have been purchased.

The *bona fides* of the transaction were directly in issue upon the trial in the district court. Upon this question the court instructed the jury, at the request of the defendant in error, as follows:

"3. The jury are instructed that in a contest between the wife and the creditors of her husband, in regard to property transferred to her by him, there is a presumption against her which she must overcome by affirmative proof and prove beyond question.

"4. The jury are instructed that in a contest between the wife and the creditors of her husband, in regard to property transferred to her by him, there is a presumption against her which she must overcome by affirmative proof and prove beyond question the *bona fides* of said sale."

The giving of these instructions is made the basis of the third assignment in the petition in error. These instructions appear to have been copied either from the syllabus in *Aultman, Taylor & Co. v. Obermeyer*, 6 Neb., 260, or from the instructions copied in the opinions in the cases of *Lipscomb v. Lyon*, 19 Id., 511, and *Woodruff v. White*, 25 Id., 745. It is claimed that these instructions held the plaintiff to a greater degree of proof than is required in civil cases. They required the plaintiff, in order to recover, to establish the good faith of the transfer of the property beyond question. The word "question" is synonymous with "doubt." The plaintiff, by the charge of the court, was therefore held to as high degree of proof as is required of the state in a criminal prosecution. It has been repeatedly held by this court in civil cases, that the party holding the affirmative of an issue, is only required to establish it by a preponderance of the evidence. (*Patrick v. Leach*, 8 Neb., 538; *Search v. Miller*, 9 Id., 27; *Kopplekom et al. v. Huffman*, 12 Id., 95; *Altschuler v. Algaza*, 16 Id., 631; *Dunbar v. Briggs*, 18 Id., 97.)

Where a debtor transfers property to his wife, and such transfer is contested by the creditors of the husband, the presumption is against the *bona fides* of the transaction, and the law places the burden upon the wife to show that the sale was not made to defraud the creditors of the husband. But she is not required to satisfy the jury in such a case beyond question that the sale was an honest one. A preponderance of the evidence is all that is required. This view is in direct line with the decision of this court in the case of *Thompson v. Loenig*, 13 Neb., 386. We quote from the syllabus: "When property is transferred by husband to his wife after a debt is contracted, as against that debt she must show by a preponderance of the proof that she is a *bona fide* purchaser."

The third and fourth instructions stated the rule too strongly against the wife, and should not have been given

to the jury. It follows that *Aultman, Taylor & Co. v. Obermeyer, Lipscomb v. Lyon,* and *Woodruff v. White,* are overruled, in so far as those cases hold that the good faith of transactions between husband and wife in relation to the transfer of property from the one to the other, by which creditors are affected, must be established beyond question.

Eight instructions requested by the plaintiff in error were refused. It is conceded in the brief of the plaintiff that no error was committed in not giving the first, second, third, fifth, and eighth, as they were substantially given by the court in his own instructions.

Complaint is made of the refusal to give the plaintiff's seventh request, which reads :

"If you shall believe from the evidence that the property in controversy was in the possession of the plaintiff, she claiming to be the owner thereof, at the time it was taken under the attachment, this is *prima facie* evidence of ownership in her; and if you further believe, from the evidence, that while the plaintiff was so in possession the defendant took the same from her, then you should find the right of property in the plaintiff, unless you further find, from the evidence, that the plaintiff did not own the property, or that the sale thereof from Garrett Stevens to the plaintiff was without sufficient consideration."

This request does not contain a correct statement of the law applicable to the case. The fact that the plaintiff had possession of the property when taken under the writs of attachment, was not *prima facie* evidence against the attaching creditors that she was the owner. In a contest between her and the creditors of her husband, the burden was upon her to satisfy the jury, by a preponderance of the testimony, that the property was not transferred to her to hinder, delay, and defraud such creditors. The instruction entirely ignored the question of *bona fides* of the transaction, and required the defendant to prove that the plaintiff did not own the property. The fourth and sixth

requests were not based upon the evidence in the case, and were properly refused.

It is insisted that the court erred in sustaining the defendant's objections to certain questions propounded to the plaintiff by her attorney, when on the witness stand. It may be observed that such errors are not assigned in the petition in error, and will not be considered by this court.

As there must be a new trial, we refrain from expressing an opinion upon the sufficiency of the testimony to sustain the verdict. The judgment of the district court is reversed and the cause remanded for further proceedings.

REVERSED AND REMANDED.

THE other judges concur.