| 32 | 637 |
| 42 | 184 |
| 32 | 637 |
| 44 | 763 |
| 32 | 637 |
| 49 | 632 |

ISAAC A. HILL ET AL. V. ISABELLA FOUSE.

[FILED SEPTEMBER 15, 1891.]

1. **Husband and Wife:** CONVEYANCES BETWEEN. A contract in good faith, between husband and wife, involving the use of her separate estate, received from parents, and not with the intent to hinder, delay, or defraud her husband's creditors, will not be deemed to be fraudulent from the fact that subsequently the husband became involved in debt, and was insolvent. (11 Neb., 245.)

2. ———: ———: BONA FIDES: BURDEN OF PROOF. In such transactions, the same principles are to be applied as between strangers;

but where the effect is to deprive the husband's creditors of an opportunity to subject his property to the payment of their claims, the circumstances of such transaction will be regarded with suspicion, and proof of their *bona fides*, will be required. (19 Neb., 511.)

Error to the district court for Kearney county. Tried below before Gaslin, J.

*J. L. McPheely*, for plaintiffs in error.

*George B. France*, and *A. H. Burnett, contra.*

Cobb, Ch. J.

The plaintiff, in the court below, on April 29, 1889, recovered a judgment, on the verdict of a jury, against the plaintiffs in error, for the sum of $403.76, and costs, which this action is brought to review on error. The petition in the court below alleged:

"First—That on the 13th day of January, 1887, and for a long time prior thereto, the plaintiff was the owner, and in possession of the following described goods and chattels, to-wit: One frame store building 18x52 feet, and 10-foot ceilings, with patent iron shelving therein, counters and other property therein, which said building was erected on lot No. 12, block 29, in the town of Minden, Kearney county, Nebraska, and was of the value of $1,000, and the plaintiff was also entitled to the rents and profits of the said building for the year prior to the 13th day of January, 1887, which was of the value of $400.

"Second—On the day aforesaid, and for a year prior thereto, the defendants obtained possession of goods and chattels, and wrongfully and unlawfully converted them to their own use, to the damage of plaintiff in the sum of $1,500.

"Wherefore the plaintiff asks judgment for the sum of $1,500, together with interest thereon at the rate of 7 per

cent from the 13th day of January, 1887, and for costs of suit."

The defendants answered :

"First—Denied that plaintiff was the owner or had any interest in the chattels described in petition; denied that she was at any time entitled to the rent thereof, and denied that defendants wrongfully obtained possession of said goods and chattels, and wrongfully and unlawfully con-verted the same to their own use.

"Second—That one John E. Fouse (husband of de-fendant in error), on or about the ―― day of ――, 1885, finding himself in failing circumstances, he then occupying said building as a store, turned over to his creditors all his stock of merchandise and said building; that out of the proceeds of the sales of said merchandise purchased from Z. T. Lindsay & Co., and others, his creditors, paid me-chanics' and other liens to the amount of $357.40.   That said Z. T. Lindsay & Co., on the 8th day of June, 1886, obtained in the county court of Kearney county, Nebraska, judgment against said John E. Fouse, and caused a tran-script of the same to be filed in the district court of said county.

"Execution issued January 13, 1887, thereon, and de-livered to Isaac A. Hill, defendant, sheriff of said county. That on the same day said sheriff levied on said chattels as the property of said John E. Fouse, under and by virtue of said execution, and after duly appraising the same and advertising the sale of same for more than thirty days, sold said building to Joel Hull, one of the defend-ants, for the sum of $300; that said creditors paid certain ground rent and other liens against said building, and that plaintiff (defendant in error) had due notice of the said levy and sale of said sheriff, and did not then, or until the commencement of this suit, claim any interest in said build-ing; that said John E. Fouse purchased said building and

paid for part of same out of the proceeds of the sale of the said goods purchased from said creditors."

Plaintiff replied denying all allegations of new matter set up in the answer.

Upon verdict being returned for defendant in error, the plaintiff in error, on the 30th day of April, 1889, at said term of court, filed a motion to set aside the verdict and for a new trial, alleging:

First—The damages are excessive, appearing to have been given under the influence of passion or prejudice.

Second—The verdict is not sustained by sufficient evidence.

Third—The verdict is contrary to law.

Fourth—Errors of law occurring at the trial duly excepted to.

Fifth—The court erred in admitting in evidence the certain receipt marked Exhibit " C."

Sixth—The court erred in admitting in evidence the receipt marked Exhibit " D."

Seventh—The court erred in admitting in evidence the receipt marked Exhibit " E."

Eighth—The court erred in admitting in evidence the receipt marked Exhibit " F."

Ninth—The court erred in admitting in evidence the certain letter marked Exhibit " G."

Tenth—The court erred in admitting in evidence the paper purporting to be a blank bill of sale marked Exhibit " H."

Eleventh—The court erred in admitting in evidence bill of sale marked Exhibit " B."

Twelfth—The verdict is contrary to instruction No. 1 offered by defendants and given by the court.

Thirteenth—The court erred in refusing and in not giving instruction No. 2 offered by defendants.

Fourteenth—The court erred in giving instructions Nos. 1 and 2 offered by plaintiff.

Fifteenth—For that the verdict is contrary to the instructions given by the court.

Sixteenth—The court erred in giving instructions herein, to-wit, the same given on its own motion.

Seventeenth—The court erred in rejecting letter-book copy of certain letter marked Exhibit "I."

Said motion was by the court overruled on the 1st day of May at said term, and judgment entered for plaintiff.

The question tried in the court below was that of the ownership of the storehouse in the town of Minden, levied on and sold as the property of the plaintiff's husband by the sheriff, defendant Hill, to defendant Hull, the agent for creditors. The plaintiff claimed the property as her separate estate. She testified, on the trial, that she now resided in York county, and formerly for twenty years in the southwestern part of Seward county, living there, with her husband and her nine children, up to May, 1885, and removed thence to Minden; that prior to coming here she had property in her own right, consisting of horses, cattle, bees, and sheep on her husband's farm, some of which was sold in April, 1885, two weeks before removing here. That she received the money from her parents, $1,000, in two different amounts, with which she purchased her stock; the last sum seven years ago, which was given to her husband to buy the stock which was left on the farm when they removed to Minden, and which was subsequently sold when they agreed to put up the building in controversy. Her agreement with her husband was to sell the stock and put the money in the building, the title to remain in her.

By the court: Did you build the building, or buy it after it was put up?

A. Part of it was built and put on the lot, and the rest we built to it.

The plaintiff further testified that she put over $900 into the building; the proposition to her was that she could have the building for the proceeds of the sale of the stock, and

43

she agreed to take it; that it was not completed until January, but was occupied before completed; there were shelving and tables in the store-room as a part of her $900.

Anna Fouse, aged twenty, and Bashia Fouse, aged nineteen, daughters of the plaintiff, corroborated the plaintiff's testimony of her ownership and sale of her property.

Albert Chatterton, aged thirty-one, had known the plaintiff and her property, as testified to, for fifteen years, and corroborated the preceding evidence. The cross-examination of these witnesses discovered nothing to discredit their testimony.

T. C. Evans testified that he had resided in Minden five years; was acquainted with plaintiff, and her husband when he was here, and the business he was in, and with the building in dispute; that part of it was moved by John Fouse in October, 1885, to the present leased lot, and subsequently the front section was built on by Fouse, and was occupied by witness in charge of a stock of clothing belonging to Fouse, but then being sold, under mortgage, by creditors for debt. The building was rented from the plaintiff at $35 per month, from January, 1886, for fifteen months, while witness was there selling the goods for the creditors, who paid rent to the plaintiff.

Rush and Clark testified that they were carpenters and builders in Minden, and knew the value of the building in question to be about $500 in January, 1887. The shelving of the store-room was proved to have been valued at $50.

Other testimony was given tending to show the ownership of the plaintiff, her payment of liens, and bills for construction, and her receipt of rents from the agent Evans. These are the exhibits objected to, from B to H inclusive. The objections to this evidence, we think, were properly overruled by the court, as it tended to show all the incidents of the plaintiff's title and ownership of a separate property, without prejudice to the defendants. Their

possession was to be justified under execution as a levy and sale of property which was, at the time, the property of the judgment debtor. This allegation is not set up by either defendant, but that "the sheriff levied upon said chattels *as* the property of John E. Fouse," possibly, avoiding affirmative proof of ownership, which was then to be left to the jury, without direct proof by the defendants.

There does not apppear to have been any element in the trial to have provoked the passion or prejudice of the jury. There was a conflict of testimony upon the material point of ownership. Taking that of the plaintiff, and her witnesses, we think it clear that there is sufficient to sustain the verdict. Taking that of the defendants, and their witnesses, doubts would be cast upon it. In this conflict, and upon these doubts, it is the province of the jury to decide. Their decision ought not to be molested, except upon the most substantial grounds of error. In the first twelve assignments of the plaintiff's errors we find none, and they are overruled.

On the trial, the court first charged the jury that, "To find for the plaintiff, they must be well satisfied that, at the time of the sale of the building on execution, and taking it by defendants, she was the owner of it. If you find the plaintiff's money, intrusted to her husband—if she intrusted some to him—did not go to pay for the building, but, with her knowledge and consent, went to the payment for goods or other property, and that she gave her husband general credit therefor, and that it was not their agreement and understanding that her money should go to the payment of the building, you will find for the defendants. In other words, if, at the sale of the building under execution, and taking of it by the defendants, it was the property of the plaintiff, you will find for her, assessing its value from the evidence, at the time the same was taken, and seven per cent from that time to the first day of this

court. But if you find from the evidence that the build-
ing at the time of taking the same was not the property
of the plaintiff, you will find for the defendants."

At the request of defendants the jury was further in-
structed " That all transactions between husband and wife,
in relation to property, by which creditors are prevented
from collecting their just dues, will be scrutinized closely,
and it must be established that such transactions were in
good faith; therefore, in this case, between the wife and
the creditors of her husband, there is a presumption
against her which she must overcome by affirmative proof,
provided you find the debt, on which judgment was recov-
ered, execution was issued, levy and sale were made of the
building in question, was contracted prior to the plaintiff's
alleged ownership of the building."

These instructions would seem to be sufficient. They
are plain to the understanding, explicit to the issues, and
impartial to the parties.

It has heretofore been held, by this court, that a contract
in good faith between husband and wife, involving the use
of her separate estate, received from parents, or inherited,
and not with the intent to hinder, delay, or defraud her
husband's creditors, will not be deemed to be fraudulent,
from the fact that subsequently the husband became in-
volved in debt and was insolvent. (11 Neb., 245.) That
is the plaintiff's claim represented in the court's instruc-
tion.

On the other hand, it has also been held that in the
transactions between husband and wife, involving her sep-
arate estate, inherited from her father, the same principles
are to be applied as between strangers; but where the
effect of the transaction is to deprive the husband's cred-
itors of an opportunity to subject his property to the pay-
ment of their claims, the circumstances of such transaction
will be viewed with suspicion, and proof of their *bona fides*
will be required. (19 Neb., 511.) This doctrine was plainly

instructed for the defendants.    It is believed to have been sufficient.    Other instructions, given, offered, or rejected, were but works of supererogation, not tending to congruity, but without prejudice to either party.

The errors are overruled, and the judgment of the district court is

AFFIRMED.

THE other judges concur.